HÉCTOR MORALES TORRES, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, ARECIBO PART, Respondent; THE PEOPLE OF PUERTO RICO, Intervener.

No. O-69-251.     Decided December 8, 1970.

*Luis Arturo Sánchez Rodríguez* for petitioner. *Gilberto Gierbolini, Solicitor General,* and *Jorge Ríos Torres, Assistant Solicitor General,* for intervener.

MR. JUSTICE TORRES RIGUAL delivered the opinion of the Court.

For the purpose of establishing his theory of self-defense against the information filed by the prosecuting attorney charging him with the offense of murder in the second degree for the death of minor Rubén Flores Figueroa,[1] petitioner

---

[1] We omit the part concerning the information for the offense of attempt to kill because it has nothing to do with the questions raised in this appeal.

herein, Héctor Morales Torres, requested from the criminal division of the Superior Court, Arecibo Part, to order the Division of Matters Concerning Minors of said Part to issue a certified copy of the orders which appear in the record of the deceased Rubén Flores Figueroa, J-66-110, showing the faults incurred by the latter being a minor. In his petition he alleged that the theory of his case was self-defense; that he would present evidence showing the bad character and poor reputation of the deceased, and that for that reason it was necessary to examine the record of the deceased in the Juvenile Court in order to prepare his defense. The judge of the Criminal Division agreed, in part, to petitioner's motion, ordering that the latter's attorney be permitted to examine the record in question, after which he should request the certified copies of the specific orders which interested him. The Division of Matters Concerning Minors denied the examination of the record based on the fact that § 7(f) of the Minors Act, Act No. 97 of June 23, 1955, 34 L.P.R.A. § 2007, and Rules 7.2, 11.2, and 11.3 of the Rules for Proceedings Concerning Children, did not permit it.

Not agreeing, we issued the writ to review.

■ It is true that the Minors Act in its § 7(f), *supra*, provides that the records of children cases shall not be subject to public inspection.[2] Such prohibition, however, should only be applied when the same attains or may attain the purposes of the statute, but does not unjustifiedly impair the rights of a defendant to a lawful defense.

The purposes of the Minors Act appear very clearly from its Statement of Motives:[3].

---

[2] Rules 7.2, 11.2 and 11.3 of the Rules for Proceedings Concerning Children also regulate the confidential nature of the social study, the legal record, and the social record of the minor.

[3] The proposed bill of the Minors Code for the Commonwealth of Puerto Rico, prepared by Judge Edwin Cortés García, expresses said purposes with more amplitude, precision, and clearness in the following manner:

"The purpose of this act is to furnish maladjusted and neglected children, preferably in their homes, with the care and guidance necessary for their welfare in harmony with public interest; to maintain and strengthen the family relations of said children; to deprive parents, temporarily or permanently, of the custody over a child only when the child's welfare or the public interest so justifies, and to give such child, in the largest possible measure, the care and guidance he should have received at home."

The Minors Act establishes different means to attain these fundamental purposes, one of them being the secrecy of the record of cases filed in the Division of Matters Concerning Minors, established in the aforementioned § 7(f).[4] Certainly,

---

"This Code is a collection of rules of conduct which, in harmony with the procedural rules which, as indispensable corollary of the same, are established, will permit us to reorient the wrongful conduct of the minor in order that we can have the reasonable hope of transforming him into a citizen useful to himself and to society. In order to attain this, we establish the Minors' Guardianship Court, whose most excelling characteristics are the following: (1) specialization of the court, (2) suppression of the use of conventional prisons, (3) supervised freedom, and (4) individualization in the treatment and the indefinite and adaptable measure which, as a complement to said individualization in the treatment, is indispensable.

" 'The Minors' Guardianship Court', which is hereby established, is based on a concept of the methods to deal effectively with the social problem represented by the 'juvenile delinquency'. Instead of a restrictive system of punishment, a guardianship system is established, basically educational, in which the minor is not charged with a public offense, so as to give him ample opportunity to rectify his 'wrongful conduct', said admission on his part, made under this law, never constituting a basis for a criminal record which may preclude his future development as a useful citizen."

[4] Other means established by the Minors Act are: that no child shall be conveyed in a vehicle devoted to the transportation of prisoners, § 2007(c); that no fingerprints or photographs shall be taken of a child held in custody, unless permitted by order of the judge; id.; that the public shall be excluded from the courtroom where the proceedings are held, unless the parents, or other legal representatives of the minor shall demand that the case be heard publicly, § 2009; that the proceedings shall not be deemed to be of a criminal nature, nor shall they entail the loss of civil rights, nor shall the order or resolution of the judge constitute a bar to any application for employment or appointment to any office or position within the public service, § 2011.

this section relies on sound reasons. It arises from the conviction that the publicity of the record and of the proceedings in the Division of Matters Concerning Minors prejudicially interfere with the possibilities of the minor's rehabilitation. Guides for Juvenile Court Judges, published by National Probation Parole Association, p. 103 (1957). These records contain the minor's history with the investigation and personal evaluation of the probation officer.[5] The more complete the information appearing therein, the Division of Matters Concerning Minors will be in a better condition to understand the difficulties of the minor and to adopt the most adequate measures, not only for the correction of the minor, but also for the protection of the community. The publicity of the record would defeat this fundamental purpose. The work of the probation officer, and, therefore, the very function of the Division of Matters Concerning Minors, would be seriously affected if the persons who have offered the information on the minor—usually the parents, the neighbors, and the school authorities—would not have the guarantee of the secrecy of the record. It would also adversely affect the possibilities of employment of the minor. Summarizing, the secrecy of the record protects important interests for the minor as well as for society.

■ These interests, however, may come in conflict with other individual interests not less important and lawful. In the event of this conflicting situation, it is a judicial function par excellence to establish a reasonable balance between the opposing interests; function which is intended to promote the social order and stability by the proper selection of the interests which should prevail according to the specific circumstances of each case. In the discharge of said stabilizing

---

[5] The complete record consists of the legal record and the social record. The former includes the complaint, the social study, and the proceedings in court. Rule 11.2. The latter includes everything related to the social study and the supervision of the minor. Rule 11.3.

function, the Division of Matters Concerning Minors was bound to consider the nature and scope of petitioner's interest in examining the records in view of the interests protected by the secrecy of said records.

However little the Division of Matters Concerning Minors might have weighed petitioner's interest, it could have been aware that this was not a futile or capricious interest. In his motion to the trial court, petitioner specified that his interest was to prepare himself adequately to substantiate his theory of self-defense against the accusation of murder in the second degree charged against him by the prosecuting attorney for the death of the minor. This is a fundamental interest, not only acknowledged by the Penal Code in its § 209, 33 L.P.R.A. § 641,[6] but still more important, constitutionally guaranteed, since it is a part of the right to legal assistance. *Cf. Hernández* v. *Delgado, Warden,* 82 P.R.R. 474 (1961); *People* v. *Fernández,* 86 P.R.R. 338 (1962).

■ The Division of Matters Concerning Minors was also bound to take into consideration the decreasing importance of the interest protected by the secrecy of the record after the minor's death. The minor's death sealed inexorably all possibility of rehabilitation. It being so, the examination of the record did not cause, then, any prejudice to the latter. This does not mean that the secrecy lost all its efficacy, since, the interest of the persons who have collaborated with the Division of Matters Concerning Minors is still subject to protection so that their collaboration shall not be disclosed and they shall not be exposed to possible reprisals or, at least, disagreeable situations with the relatives of the deceased minor.

■ The minor's death does not have the effect of rendering these records into public documents, but, as may be seen, it considerably diminishes the absolute application of the pro-

---

[6] Section 209, subdivision 3, establishes as justification for the commission of homicide, the defense of the person who commits it, as well as that of his family, etc.

hibition contained in the aforesaid § 7 (f). In other words, the balance of the interests in conflict is simplified after the minor's death.

The stabilizing function of the court operates similarly when the minor is alive. In both cases it is necessary to weigh the interests in conflict, always having in mind the sound and prudent jurisprudential rule that only when it is necessary to effectuate a public purpose superior in its scope to the individual interest, the former may prevail over the latter. *Cf. Griswold* v. *Connecticut*, 381 U.S. 479, 497. That is, the enervation of the individual right by the State can only be justified by the eminent social need of protecting the common welfare.

■ The Solicitor General sustains that we must affirm the order issued by the Division of Matters Concerning Minors, preventing the examination of the record in question by petitioner, on the ground that the latter "has not placed this Court in a position to decide that the minor's record is indispensable for his defense." That is not our function, nor that of the trial court either. Whether or not the information appearing in the minor's record is necessary for a defendant is a question that the latter must determine. The function of the Division of Matters Concerning Minors is limited to determining whether or not it grants petitioner's motion on the basis of the rules we have discussed. The admissibility of the record as evidence is a question to be elucidated at the trial, taking into consideration its materiality and pertinency. To this respect, we must point out that the evidence on bad reputation and dangerous character of the deceased is admissible when self-defense is alleged by the defendant, so as to establish the reasonableness of defendant's fear of being the victim of grave corporal damage at the time of the homicide, as well as to corroborate evidence on the deceased's conduct at that time. See: *People* v. *Cruz*, 65 P.R.R. 160, 166 (1945); *People* v. *Dumas*, 51 P.R.R. 819, 824–825 (1937); II Warren,

On Homicide 756, § 229 (1938) ; I Jones, On Evidence 304, § 172 (5th ed.) ; I Wharton, Criminal Evidence 474, § 228 (12th ed.) ; I Conrad, Modern Trial Evidence 172, § 181 (1956).

■ The only requisite for presenting evidence as to the bad reputation and dangerous character of the deceased is that the bases therefor be previously laid down. The mere allegation of self-defense suffices therefor. *People* v. *Dumas, supra.*

The order of the Division of Matters Concerning Minors precluding petitioner from examining the record of the deceased Rubén Flores Figueroa will be annulled and the case remanded for further proceedings consistent with the opinion.

Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra did not participate herein.